# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

**UNITED STATES OF AMERICA**
      **Plaintiff,**

  v.                                       Case No. 16-CR-168

**GREGORY TIRADO, SR.**
      **Defendant.**

## DECISION AND ORDER

Defendant Gregory Tirado, Sr. moves for sentence reduction pursuant to 18 U.S.C. § 3582(c)(1)(A). I first set forth the standards for sentence modification under § 3582(c)(1)(A) before addressing defendant's motion.

### I. SENTENCE MODIFICATION STANDARDS

Section 3582(c)(1)(A) authorizes the district court to grant what is commonly known as "compassionate release." The statute provides, in pertinent part:

> [T]he court, upon motion of the Director of the Bureau of Prisons, or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in section 3553(a) to the extent that they are applicable, if it finds that—
>
> (i) extraordinary and compelling reasons warrant such a reduction . . .
>
> and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission[.]

18 U.S.C. § 3582(c)(1)(A)(i). The statute contains three requirements: (1) the defendant must

first make a request to the warden before applying to the court; (2) the defendant must then demonstrate to the court that "extraordinary and compelling reasons" warrant a reduction in his sentence; and (3) the court must determine whether, even if such reasons are shown, a reduction of the sentence would be inconsistent with the applicable 18 U.S.C. § 3553(a) factors. United States v. Corbitt, No. 16-CR-107, 2021 U.S. Dist. LEXIS 43646, at *5 (E.D. Wis. Mar. 9, 2021).

**A.     Exhaustion**

Before 2018, compassionate release required a motion from the BOP. United States v. Sanford, 986 F.3d 779, 781 (7th Cir. 2021). However, the First Step Act of 2018 amended the compassionate release statute to permit the court to adjudicate a motion directly from the defendant—provided, however, that the defendant must first present his request for compassionate release to the warden and exhaust administrative appeals (if the request is denied) or wait 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier. Id. at 781-82. The Seventh Circuit has held that, while this "exhaustion" requirement is not jurisdictional, it is a mandatory claim-processing rule which must be enforced if raised by the government. Id. at 782; see also United States v. Williams, 987 F3d 700, 703 (7th Cir. 2021) (holding that "an inmate is required to present the same or similar ground for compassionate release in a request to the Bureau as in a motion to the court").

**B.     Extraordinary and Compelling Reasons**

The statute does not define the term "extraordinary and compelling reasons." Rather, Congress instructed the Sentencing Commission, in promulgating general policy statements

2

regarding the sentence modification provisions in § 3582(c)(1)(A), to describe what should be considered extraordinary and compelling reasons for sentence reduction, including the criteria to be applied and a list of specific examples. 28 U.S.C. § 994(t).[1] The Commission's policy statement provides:

> Upon motion of the Director of the Bureau of Prisons under 18 U.S.C. § 3582(c)(1)(A), the court may reduce a term of imprisonment (and may impose a term of supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment) if, after considering the factors set forth in 18 U.S.C. § 3553(a), to the extent that they are applicable, the court determines that—
>
> (1) (A) extraordinary and compelling reasons warrant the reduction . . .
>
> (2) the defendant is not a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g); and
>
> (3) the reduction is consistent with this policy statement.

U.S.S.G. § 1B1.13. The commentary to the policy statement indicates that extraordinary and compelling reasons exist under these circumstances:

> (A) Medical Condition of the Defendant.—
>
> (i) The defendant is suffering from a terminal illness (i.e., a serious and advanced illness with an end of life trajectory). A specific prognosis of life expectancy (i.e., a probability of death within a specific time period) is not required. Examples include metastatic solid-tumor cancer, amyotrophic lateral sclerosis (ALS), end-stage organ disease, and advanced dementia.
>
> (ii) The defendant is—

---

[1] Congress did state that: "Rehabilitation of the defendant alone shall not be considered an extraordinary and compelling reason." Id. Courts have held that "while rehabilitative efforts alone will not support compassionate release, the court may take such efforts into account as part of the analysis." United States v. Anderson, No. 14-CR-186, 2020 U.S. Dist. LEXIS 187983, at *13 (E.D. Wis. Oct. 8, 2020); see also United States v. Hudson, 967 F.3d 605, 613 (7th Cir. 2020) (noting that the court may in deciding a First Step Act motion consider the defendant's post-sentencing conduct as part of the § 3553(a) analysis).

3

> > (I) suffering from a serious physical or medical condition,
> >
> > (II) suffering from a serious functional or cognitive impairment, or
> >
> > (III) experiencing deteriorating physical or mental health because of the aging process,
> >
> > that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover.
>
> (B) Age of the Defendant.—The defendant (i) is at least 65 years old; (ii) is experiencing a serious deterioration in physical or mental health because of the aging process; and (iii) has served at least 10 years or 75 percent of his or her term of imprisonment, whichever is less.
>
> (C) Family Circumstances.—
>
> > (i) The death or incapacitation of the caregiver of the defendant's minor child or minor children.
> >
> > (ii) The incapacitation of the defendant's spouse or registered partner when the defendant would be the only available caregiver for the spouse or registered partner.
>
> (D) Other Reasons.—As determined by the Director of the Bureau of Prisons, there exists in the defendant's case an extraordinary and compelling reason other than, or in combination with, the reasons described in subdivisions (A) through (C).

U.S.S.G. § 1B1.13 cmt. n.1.

The Commission has not updated the policy statement, which purports to require a motion from the director of the Bureau of Prisons, see U.S.S.G. § 1B1.13 cmt. n.4, since the passage of the First Step Act, which allowed defendants to bring their own motions. Accordingly, "because the Guidelines Manual lacks an applicable policy statement, the trailing paragraph of §3582(c)(1)(A) does not curtail a district judge's discretion." United States v. Gunn, 980 F.3d 1178, 1180 (7th Cir. 2020); see also United States v. Brooker, 976 F.3d 228, 237 (2d Cir. 2020) ("[T]he First Step Act freed district courts to consider the full slate of

extraordinary and compelling reasons that an imprisoned person might bring before them in motions for compassionate release. Neither Application Note 1(D), nor anything else in the now-outdated version of Guideline § 1B1.13, limits the district court's discretion.").

Giving the statutory terms their common meaning, a defendant seeking compassionate release must demonstrate that his situation is extraordinary, i.e., beyond what is usual, customary, or regular, and his need for release compelling, i.e., irreparable harm or injustice will result if relief is not granted. United States v. Scott, 461 F. Supp. 3d 851, 862 (E.D. Wis. 2020); see also Gunn, 980 F.3d at 1180 (noting that the Commission's analysis can guide discretion without being conclusive). In the context of the COVID-19 pandemic, courts have found that modification may be warranted if the prisoner demonstrates that he is particularly vulnerable to the virus based on his age, health status, or other specific circumstances; courts have tended to deny compassionate release requests based on general concerns about possible exposure in prison. E.g., United States v. Dover, No. 14-CR-196, 2020 U.S. Dist. LEXIS 133340, at *16-17 (E.D. Wis. July 28, 2020); see also United States v. Thomas, No. 1:11-CR-22, 2020 U.S. Dist. LEXIS 172963, at *6-7 (N.D. Ind. Sept. 22, 2020) (explaining that § 3582(c)(1)(A) contemplates a sentence reduction based on the particular circumstances of where the defendant is housed and his personal health conditions). Courts often rely on guidance from the CDC in determining whether a prisoner's medical conditions elevate his risk of severe illness from the virus. E.g., United States v. Villasenor, No. 03 CR 0689 (-02), 2020 U.S. Dist. LEXIS 228055, at *15 (N.D. Ill. Dec. 4, 2020).

**C.    Section 3553(a) Factors**

Finally, if the court decides that extraordinary and compelling reasons have been shown, it must also consider the applicable § 3553(a) factors to determine whether the sentence

5

should be modified.  See United States v. Saunders, 986 F.3d 1076, 1078 (7th Cir. 2021) ("Because of the importance of the § 3553(a) factors, courts are not compelled to release every prisoner with extraordinary and compelling health concerns.").  Those factors include: (1) the nature and circumstances of the offense, and the history and characteristics of the defendant; (2) the need for the sentence imposed to provide just punishment, deterrence, protection of the public, and correctional treatment; (3) the kinds of sentences available; (4) the sentencing guideline range; (5) any pertinent policy statement issued by the Sentencing Commission; (6) the need to avoid unwarranted sentence disparities; and (7) the need to provide restitution to the victims of the offense.  18 U.S.C. § 3553(a).  In some cases, a court may find that the relevant § 3553(a) factors outweigh the extraordinary and compelling reasons warranting compassionate release and/or that release would undermine the goals of the original sentence.  United States v. Bartlett, No. 06-CR-273, 2020 U.S. Dist. LEXIS 101393, at *13-14 (E.D. Wis. June 9, 2020).

## II.  FACTS AND BACKGROUND

In 2015, law enforcement commenced an investigation into the drug trafficking activities of defendant and his son, Gregory Tirado, Jr., who were believed to be the leaders of the Racine Maniac Latin Disciples street gang.  The investigation, which consisted of court-authorized wiretap intercepts, controlled buys, physical seizures, surveillance, and information from confidential sources, revealed that the Tirados and their co-conspirators distributed significant quantities of powder cocaine, crystal methamphetamine, and marijuana, using stash houses, runners, and enforcers, threatening violence, and possessing firearms, all in furtherance of their drug trafficking activities.  (PSR ¶ 14.)

During the course of the conspiracy, defendant obtained cocaine from various sources

6

of supply in Wisconsin, Illinois, and Nevada. (PSR ¶ 34.) Law enforcement also conducted multiple controlled buys of cocaine from defendant. (PSR ¶ 35.) During one of these buys, defendant threatened to kill the source if the source was telling on him. When the source laughed at this comment, defendant responded, "I'm not joking with you motherfucker." He then had two of his co-actors follow the source into the basement and conduct a search of the source in the dark. (PSR ¶ 36.) Court-authorized wiretap interceptions further reflected defendant's drug trafficking and, according to investigators, involvement in the Maniac Latin Disciples. (PSR ¶ 41.)

Defendant pleaded guilty to conspiracy to distribute 5 kilograms or more of cocaine. In his statement to the pre-sentence report ("PSR") writer, defendant acknowledged his involvement in distributing cocaine, indicating that it was an opportunity for easy money. He further indicated that he was about to turn 49 and felt foolish. (PSR ¶ 123.)

The PSR documented a fairly significant prior record, including convictions for armed robbery in 1994, arising out of a home invasion for which defendant was sentenced to 4 years in prison (PSR ¶ 137); perjury in 1997, based on his provision of false testimony at a hearing for his co-actor in the robbery and for which he was sentenced to 2 years in prison (PSR ¶ 138); failure to cause a child to attend school in 1999 for which he was fined (PSR ¶ 139); disorderly conduct and victim intimidation in 2003, arising out of a domestic violence incident involving his wife (PSR ¶ 140); and substantial battery in 2011, arising out of an incident in which he struck his sister-in-law, with whom his wife was staying because she was afraid of defendant (PSR ¶ 142). During the pre-sentence interview, defendant admitted being physically abusive towards his wife in the past. (PSR ¶ 164.) Defendant and his wife had five children, two of whom were co-defendants in this case; one of his daughters was the girlfriend

of another co-defendant. (PSR ¶ 165.)

The sentencing guidelines called for 120-121 months in prison, and the parties jointly recommended a sentence of 120 months, the statutory mandatory minimum. On April 22, 2019, I imposed a sentence of 120 months in prison followed by five years of supervised release.

On October 5, 2020, while serving his sentence at FCI Terre Haute, defendant filed the instant motion for sentence reduction. (R. 998 at 1-2.) Defendant indicated that made a request for release through the warden on June 22, 2020, which was denied on July 30, 2020. (R. 998 at 3; R. 998-1 at 1-5.) On the merits, defendant indicated that he had served about ½ of his sentence, maintained an exemplary prison record, paid his assessment in full, and completed all programming required by his unit team. (R. 998 at 2, 5; R. 998-1 at 8-11.) He further indicated that FCI Terre Haute had experienced a COVID-19 outbreak, and that given the high risk of infection and the time remaining on his sentence he should be granted a reduction. (R. 998 at 2.) He argued that FCI Terre Haute did not have the means or experience to handle the pandemic, indicating that three inmates had died. (R. 998 at 5.) Defendant noted that he has asthma and cardiac arrhythmia (R. 998 at 5; R. 998-1 at 13-14), but he admitted that "both are currently managed and I should have no problem maintaining them." (R. 998 at 5.) Finally, defendant stated that he has a solid release plan, with a job and a place to live. (R. 998 at 5, 8.)

I referred the matter to Federal Defender Services ("FDS"), pursuant to the court's standing order regarding First Step Act motions (R. 1000), but FDS declined to supplement the pro se submission (R. 1001). The government then responded in opposition, providing copies of defendant's prison medical records. (R. 1003.) I permitted defendant to file a reply, but he

8

did not do so within the time set. On March 23, 2021, he filed a letter advising of a new prison placement and indicating he had been tested for COVID-19 another six times at his new facility. (R. 1053.) Defendant is now serving his sentence at FCI Texarkana, with a projected release date of April 14, 2025.

### III. DISCUSSION

Defendant has satisfied the exhaustion requirement, as the government acknowledges.[2] (R. 1003 at 5.) However, his motion fails on the merits.

First, defendant fails to demonstrate extraordinary and compelling reasons for release. While the record documents his asthma and cardiac arrhythmia (R. 1003-3 at 17), neither are sufficiently serious to satisfy the statutory standard.

The CDC indicates that asthma, if moderate to severe, can make a person more likely to get severely ill from COVID-19,[3] but defendant concedes that his asthma is well-managed, and nothing in the record suggests that it is moderate to severe. Defendant told the PSR writer that he suffers from asthma, for which he used an albuterol inhaler as needed, but he denied any other medical problems. (PSR ¶ 170.) The prison medical records indicate that he is "doing well with his asthma" (R. 1003-3 at 6), "denies any nocturnal coughing or shortness of breath" (R. 1003-3 at 6), and with "no symptoms of asthma flaring" (R. 1003-3 at 10). He was

---

[2]The government notes that in his administrative request defendant mentioned asthma but not cardiac arrhythmia. (R. 1003 at 5 n.2; R. 1003-1.) However, the government does not suggest the motion be denied for this reason.

[3]https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html?CDC_AA_refVal=https%3A%2F%2Fwww.cdc.gov%2Fcoronavirus%2F2019-ncov%2Fneed-extra-precautions%2Fgroups-at-higher-risk.html (last visited April 6, 2021). As the government notes, some authorities have questioned whether asthma is a risk factor. (R. 1003 at 8-9.) I will assume it could be, with proper evidentiary support.

9

provided an albuterol inhaler to use as needed (R. 1003-3 at 8), with another medication discontinued because he was not using it regularly (R. 1003-3 at 10). Absent further evidence demonstrating severity, defendant's asthma cannot support release. See, e.g., United States v. King, No. 18-20416, 2021 U.S. Dist. LEXIS 63402, at *5-6 (E.D. Mich. Apr. 1, 2021) (collecting cases denying release based on asthma where the prisoner failed to demonstrate severity and/or the condition appeared to be well-controlled).

The CDC indicates that heart conditions such as heart failure, coronary artery disease, cardiomyopathies, and possibly high blood pressure (hypertension) can make a person more likely to get severely ill from COVID-19,[4] but defendant does not claim to suffer from any such condition; cardiac arrhythmia (a/k/a an irregular heartbeat) is not specifically mentioned. United States v. Cerda, No. 08 Cr. 857-4 (GBD), 2020 U.S. Dist. LEXIS 147737, at *4-5 (S.D.N.Y. Aug. 17, 2020). Nor do the medical records suggest that defendant has a serious heart problem. For instance, in June 2020, after defendant complained of heart palpitations (R. 1003-3 at 6, 8), an EKG was performed, which showed normal sinus rhythm with no acute changes (R. 1003-3 at 10), and a chest x-ray revealed no radiographic evidence for an acute cardiopulmonary process (R. 1003-3 at 37).

Defendant alleged a severe COVID-19 outbreak at FCI Terre Haute, a contention the government disputes in its response (R. 1003 at 11-12), but defendant is now housed at FCI Texarkana, which reports no active inmate cases as of April 6, 2021.[5] The BOP also reports

---

[4] https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html?CDC_AA_refVal=https%3A%2F%2Fwww.cdc.gov%2Fcoronavirus%2F2019-ncov%2Fneed-extra-precautions%2Fgroups-at-higher-risk.html (last visited April 6, 2021).

[5] https://www.bop.gov/coronavirus/ (last visited April 6, 2021).

81 staff and 182 inmate vaccinations at this facility.[6] The medical records further show that defendant has received adequate care during his time in BOP custody, including cardiology testing (R. 1003-3 at 1-2) and COVID-19 screening (R. 1003-3 at 17, 24, 27; see also R. 1053 at 1).

Second, even if defendant could establish extraordinary and compelling reasons, I would deny his motion under § 3553(a). As discussed above, defendant occupied a leadership position in a large-scale drug trafficking organization, which employed enforcers and engaged in acts of violence and firearm possession in furtherance of its activities. As also discussed above, defendant personally threatened violence against a cooperating source during a controlled buy (PSR ¶ 126); the government notes that this source was later shot at by gang members seeking revenge due to his cooperation (R. 1003 at 13-15). Releasing defendant now, after he has served barely half of his sentence, would unduly depreciate the seriousness of the offense and fail to promote respect for the law. See Saunders, 986 F.3d 1078 (holding that district court permissibly ruled that excusing a prisoner from two-thirds of his sentence for a serious crime would not promote respect for the law); United States v. Pawlowski, 967 F.3d 327, 330 (3d Cir. 2020) (upholding district court's denial of compassionate release based on time remaining on the prisoner's sentence).

I also see a need to protect the public. 18 U.S.C. § 3553(a)(2)(C). While defendant appears to have done well in prison, with a low risk pattern score (R. 998-1 at 12) and plans for release (R. 998 at 8), he has an extensive prior record, including violent offenses (PSR ¶¶ 137-42), and little history of legitimate employment in the community (PSR ¶¶ 185-86). See

---

[6]https://www.bop.gov/coronavirus/ (last visited April 6, 2021).

United States v. Jones, 838 Fed. Appx. 199, ___ (7th Cir. 2021) ("[W]eighing Jones's criminal past against his recent good conduct is an appropriate exercise of discretion."). Finally, releasing defendant at this stage would create unwarranted disparity with others convicted of similar, large-scale drug trafficking offenses. See, e.g., United States v. Shanklin, No. 3:14-cr-00080, 2020 U.S. Dist. LEXIS 219060, at *18-21 (M.D. Tenn. Nov. 23, 2020) (finding that releasing defendant after serving 7 years of 12-year drug sentence would create unwarranted disparity).

## IV. CONCLUSION

**THEREFORE, IT IS ORDERED** that defendant's motion to reduce sentence (R. 998) is denied.

Dated at Milwaukee, Wisconsin, this 7th day of April, 2021.

/s/ Lynn Adelman
LYNN ADELMAN
District Judge